## THE ERIN.[1]

### THE STEAM-SHIP SAMANA *v.* THE ERIN.

*(District Court, E. D. New York.   October 15, 1888.)*

SALVAGE — DISABLED STEAMER — DANGEROUS CURRENT — TOWAGE — VALUES — AWARD.
  The steam-ship E., when about 50 miles north of the east end of the island of Cuba, lost her propeller key, and was thus deprived of motive power. The weather was fine, and the vessel was in the track of ships, but there was not wind enough to enable her, by her sails, to stem a current which there sets towards the rocky coast at the rate of one to two and a half knots an hour. A signal of distress, set by the E., was observed by the steam-ship S., which altered her course, and bore down to the E., and the masters of the two vessels entered into an agreement in writing that the E. should be towed into port, and the compensation left to the agents of the vessels, either at New York or Boston. The S. thereupon put out a hawser to the E., and with some difficulty towed her safely to her destination, a distance of 240 miles. The S. was not damaged in any way by the towage, but was delayed one day in her arrival at her destination. Her value was $50,000. The E., with her stores was worth $26,000. The claimants of the E. offered $1,000 as compensation for the service, claiming that it was simple towage. *Held,* that the service was a salvage service, and $4,000 a proper salvage award.

In Admiralty. Libel for salvage.
*Wheeler, Cortis & Godkin,* for libelant.
*Whitehead, Parker & Dexter,* for claimants.

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

BENEDICT, J. This is an action for salvage. The circumstances are as follows: On the 1st day of July, 1888, the steam-ship Erin, bound on a voyage from Baltimore to Port Antonio, Jamaica, when about 50 miles north of Cape Maysi, which is the eastern end of the island of Cuba, at half past 7 in the morning, lost the key of her propeller, and was thus deprived of motive power. The weather at the time was fine, sea smooth, and the wind very light from eastwardly. The current at that point sets to the S. S. W. at the rate of from one to two and a half knots an hour towards the coast of Cuba, which, according to the testimony, is there a rocky coast, offering no anchorage, and with which the captain of the Erin was unfamiliar. The steamer was schooner rigged, able to spread but little canvas, and, owing to the light breeze and insufficient sail power, she could make no progress. A signal of distress was displayed, which, a few hours later, was observed by the steam-ship Samana, also bound to Port Antonio. The Samana thereupon altered her course about a point to the westward, bore down to the Erin, and hove to, close by. The captain of the Samana launched a boat, and went on board the Erin, and there the following agreement was made between the two masters:

"This is an agreement between the captain and representative of the British steamer Erin, of Glasgow, fallen in with, disabled, (with signals of distress,) in about latitude 21.20 N.; longitude 74.15 W., by British steamer Samana, of Liverpool, to tow said disabled steamer Erin to Port Antonio, Jamaica. We, the representatives of the above-mentioned steamers and their charterers, agree to leave the amount to be paid for towing the above-mentioned disabled steamer Erin to Port Antonio, Jamaica, to the agents of the above-mentioned steamers or their legal representatives, either in New York or Boston."

Thereafter a three and a half inch steel hawser was passed from the Erin to the Samana, and at about noon the Samana proceeded on her course to Port Antonio, with the Erin in tow. During the night a heavy sea arose, and both vessels rolled considerably, the Erin steering very badly. This continued during the next day, and about half past 2 in the afternoon the steel hawser parted about midway between the two vessels. The Samana then steamed around the Erin, endeavoring to pass her a line, but, owing to the heavy sea running, was unable to do so, and finally a boat was launched from the Erin, and a new 8-inch Manilla hawser belonging to the Samana was made fast on board the Erin, and the vessels once more proceeded towards Port Antonio, where they arrived about 8 o'clock in the evening of the same day. The Erin had been towed a distance of about 240 miles by the Samana, whereby her arrival at her destination was delayed one day. Port Baracoa was 60 miles from the place where the Erin was taken in tow, Guantanamo was 147 miles, and Santiago, where there was a dock, was 187 miles away. These ports were passed on the way to Port Antonio, no doubt because the master of the Samana was anxious to reach Port Antonio as soon as possible, where a cargo of fruit was awaiting his arrival. No damage was sustained by the Samana in the performance of this service. The value of the Erin, with her stores, was $26,000. She was light, and had no passengers. The Samana was a new ship, worth $50,000. The claimant offers the sum

of $1,000. This the owners of the Samana deem insufficient compensation for the services rendered.

That a salvage service was performed by the Samana cannot be denied. The Erin was helpless, at a point less than a hundred miles north-east of a dangerous coast, towards which she was driving at the rate of thirty or forty miles a day. If not fallen in with by some vessel, her destruction was extremely probable; but her chance of being fallen in with by other vessels was great, for she was in the channel where many steamships pass. This circumstance, while it goes to decrease the peril, does not destroy it. The Erin was in a position of peril, and was rescued therefrom by the voluntary exertions of the Samana. It has been contended on the part of the claimants that the agreement signed by the masters makes the case one of simple towage. I do not so understand the agreement. The service expected of the Samana was, of course, a towing service; but the towing was to be rendered under circumstances which rendered the service salvage, and the Samana is entitled to a salvage reward. In support of the offer made by the Erin, I have been referred to a calculation of the percentages that have been allowed by various courts in cases of salvage service more or less similar to those rendered in the present case, and it has been contended that a similar percentage upon the value of the Erin would not amount to more than the thousand dollars offered by the Erin. But no fixed rule for determining the amount of salvage awards can be based on a comparison of percentages. Where the value is large, the percentage may for that reason be less. Where the value saved is small, the percentage must be higher, in order to give adequate reward. In this case the assistance required was willingly and promptly furnished. It was sufficient, but it was an easy service. Most of the actual labor performed was performed by the crew of the Erin. The Samana did not deviate from her voyage, although it would have been to the interest of the Erin to have been taken to Baracoa or Santiago, because there was a dry-dock. Taking all the circumstances of this case into consideration, I am of the opinion that an award of $4,000 would be just.